**Milan BROUGHTON, Trustee for the heirs of Richard W. Broughton, Deceased, et al., Appellants,**

v.

**Robert MAES, Respondent.**

**No. C1–85–1032.**

Court of Appeals of Minnesota.

Dec. 17, 1985.

Review Denied Feb. 14, 1986.

John H. McLoone IV, Waseca, for appellants.

Kenneth R. White, Farrish, Johnson, Maschka & Hottinger, Mankato, for respondent.

Heard, considered and decided by LANSING, P.J., and RANDALL and CRIPPEN, JJ.

### OPINION

LANSING, Judge.

This is an appeal from a grant of summary judgment in favor of a landlord on ap-

pellants' wrongful death action. We affirm.

## FACTS

The appellants are the heirs and next of kin of Richard W. Broughton and Gerard Snyder, who died on February 16, 1980, in a fire which destroyed the house they were renting in Mankato. They had been renting the house for approximately two weeks before the fire occurred. Respondent Robert Maes owned the house.

It is undisputed that the fire was electrical in origin. The fire started in the southeast corner of the living room. There were two electrical outlets in the living room: one on the west wall and one on the east wall. Maes was present in the home when the tenants discovered that the outlet on the west wall sparked and did not work properly. The decedents used an extension cord, connected to the outlet on the east wall, to extend electricity to appliances (lamp, stereo, television and clock) located on the west side of the room. There is a factual dispute as to whether Maes suggested using the extension cord.

Appellants' expert witnesses testified in depositions that the source of ignition was either (1) a loose connection between the wall socket and the extension cord, (2) a loose connection between the extension cord and an appliance, or (3) a faulty lamp cord. All three of these possible causes were within decedents' control. The experts ruled out faulty house wiring and the extension cord itself as sources of ignition.

Appellants brought a wrongful death action against Maes in 1980. Discovery continued until 1984. In December 1984 Maes moved for summary judgment and on March 1, 1985, the motion was granted. Appellants argue that issues of material fact regarding Maes' negligence in causing the fire and in preventing decedents' escape preclude summary judgment.

## ISSUE

Did the trial court err in granting summary judgment in favor of the landlord on appellants' wrongful death action?

## ANALYSIS

Appellants argue that Maes was negligent in failing to repair the outlet, thereby necessitating the use of an extension cord. A loose connection between the extension cord and either the lamp cord or the functioning outlet was allegedly the cause of the electrical fire. There is no lease agreement contained in the record, and appellants do not allege any contractual undertaking by Maes to keep the property in repair. Instead, they rely on the general duty of the landlord. Specifically, appellants argue that the use of an extension cord under the circumstances violated the National Fire Code. They also appear to argue that Maes violated the state building code by having only one functional outlet in the living room.

The elements of a cause of action in negligence are a duty, the breach of that duty, causation, and damage. *See Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149, 157 (Minn.1982). Even if appellants proved the fire or building codes were applicable, which the trial court found they did not, the landlord's duty to a tenant under the common law was a narrow one; he or she was generally not liable to a tenant for any damage caused by defective conditions existing at the time the premises were leased. Restatement (Second) of Torts § 356 comment a (1965). The courts have carved out several exceptions to the general rule depending on whether (1) there is a hidden dangerous condition on the premises of which the landlord is aware, but the tenant is not; (2) the land is leased for purposes involving admission of the public; (3) the premises are still in control of the landlord; and (4) the landlord negligently repairs the premises. *Id.* at §§ 357–362; *Prosser and Keeton on the Law of Torts* § 63 at 434–46 (5th ed. 1985).

The modern trend has been to expand the common-law duty of a landlord beyond these exceptions and require the exercise of reasonable care under the circumstances. The Tennessee Supreme Court was the

first to eliminate the distinction, as to duty, between landlords and others. In *Willcox v. Hines,* 100 Tenn. 538, 549, 46 S.W. 297, 299 (1898), the court said:

> The ground of liability upon the part of a landlord when he demises dangerous property, has nothing special to do with the relation of landlord and tenant. It is the ordinary case of liability for personal misfeasance, which runs through all the relations of individuals to each other.

In the last decade, several other courts have followed suit. *See Brennan v. Cockrell Investments, Inc.,* 35 Cal.App.3d 796, 111 Cal.Rptr. 122 (1973); *Stephens v. Stearns,* 106 Idaho 249, 678 P.2d 41 (1984); *Young v. Garwacki,* 380 Mass. 162, 402 N.E.2d 1045 (1980); *Sargent v. Ross,* 113 N.H. 388, 308 A.2d 528 (1973); *Basso v. Miller,* 40 N.Y.2d 233, 386 N.Y.S.2d 564, 352 N.E.2d 868 (1976); *Pagelsdorf v. Safeco Insurance Co. of America,* 91 Wis.2d 734, 284 N.W.2d 55 (1979).

■ Our supreme court, however, has not abandoned the general rule in favor of the modern rule. The rule in Minnesota, as to defective conditions on the premises, is that a landlord who has not agreed to repair the leased premises has only a duty to warn a tenant of a defective condition if the landlord knows or should know of the danger and if the tenant, exercising due care, would not discover it.[1] *Johnson v. O'Brien,* 258 Minn. 502, 506, 105 N.W.2d 244, 247 (1960).

■ As a general rule, issues of negligence are questions of fact and are not susceptible to summary adjudication. *Illinois Farmers Insurance Co. v. Tapemark Co.,* 273 N.W.2d 630, 633–34 (Minn.1978). However, where the material facts are undisputed and the law compels only one conclusion, summary judgment may be granted. *Id.* at 634. Maes' failure to repair the outlet does not fit into any of the exceptions to landlord nonliability recognized in Minnesota.[2] Specifically, there was no breach of a duty to warn because the evidence is uncontroverted that he disclosed the malfunctioning outlet to the tenants. We are constrained to hold that the trial court did not err in granting summary judgment because, viewing the evidence in the light most favorable to appellants, Maes breached no duty to them under existing law.

Appellants also argue that a genuine issue of material fact exists because Maes had painted the windows shut and thereby impaired the decedents' means of escape from the fire. Liability for negligence could be grounded in part on a landlord's duty, once he undertakes to make repairs or improvements, to do so in a reasonable manner. *See Prosser and Keeton* § 63 at 445.

■ Here, however, the evidence presented by appellants does not raise a material issue of fact. The only evidence in support of their contention is a statement by Maes, in response to a question as to what remodeling or repairs he had made since buying the house, that "I did some work on the outside; I painted, shingled,

---

1. Minnesota has enacted a statute which implies a covenant of habitability into every lease or license of residential premises. Minn.Stat. § 504.18 (1984), passed in 1971, reads in part:
   Subd. 1. In every lease or license of residential premises, whether in writing or parol, the lessor or licensor covenants:
   (a) That the premises and all common areas are fit for the use intended by the parties.
   (b) To keep the premises in reasonable repair during the term of the lease or license, except when the disrepair has been caused by the willful, malicious, or irresponsible conduct of the lessee or licensee or a person under his direction or control.
   The existence of such statutes and judicial decisions implying similar warranties have supplied some of the impetus to other courts in expanding the scope of a landlord's duty. *See Sargent v. Ross,* 113 N.H. at 396–97, 308 A.2d at 533–34; *Pagelsdorf v. Safeco Insurance Co.,* 91 Wis.2d at 743–44, 284 N.W.2d at 60. This court recently held that enactment of § 504.18 did not alter a landlord's tort liability by supplying a statutory standard of care. *See Hanson v. Roe,* 373 N.W.2d 366, 370 (Minn.Ct.App.1985).

2. In addition to the exceptions listed, *supra,* Minnesota may have created an additional exception in *Ponticas v. K.M.S. Investments,* 331 N.W.2d 907 (Minn.1983). This exception, however, does not relate to repair of the premises.

remodeled the living room * * *." This statement is insufficient to raise the issue of negligent repairs. Therefore, the trial court did not err in concluding that no issue of material fact existed.

## DECISION

The trial court did not err in granting summary judgment to the landlord because appellants raised no issue of material fact regarding the landlord's duty to warn of concealed defects or the landlord's negligent painting of the windows.

Affirmed.

CRIPPEN, J., concurs specially.

CRIPPEN, Judge (concurring specially).

Because the question of law in this case is an important one that should be considered by the Minnesota Supreme Court, I would certify the case for accelerated review under Minnesota Statutes section 480A.10, subdivision 2(b). A supreme court decision will help develop the law, and resolution of the question has possible statewide impact. Minn.R.Civ.App.P. 117, subd. 2(d)(2). *See id.* Rule 118, subd. 1.

I concur in the opinion of the majority of the panel, because their decision conforms to proper reading of prior Minnesota law. *See* 4 *Minnesota Practice*, 296 (1974) (jury instruction guideline defining a landlord's duty when latent defects exist).

As the majority reports, several courts during the last decade have recognized a landlord's duty to exercise reasonable care under the circumstances. The standard has not been reviewed in Minnesota for several decades. In the *Johnson* case, discussed in the majority opinion, the court expanded the landlord's responsibility for disclosure of unsafe conditions to the case where the landlord has information that would lead an ordinarily reasonable person to suspect that danger exists. *Johnson v. O'Brien*, 258 Minn. 502, 506, 105 N.W.2d

244, 247 (1960). A more expanded definition of the landlord's duty was not urged in *Johnson*. Approving the changed definition at issue there, one first advanced in an instruction of the trial judge in the case, the court said:

We agree with the trial court that "To require one to use that care which an ordinarily prudent person would exercise under the same or similar circumstances can hardly be onerous, unreasonable or oppressive."

*Id.* at 506–07, 105 N.W.2d at 247.

Accelerated review would also permit the supreme court to determine the impact of Minnesota Statutes section 504.18, subdivision 1 (1984). Enacted in 1971, this statute established covenants of the landlord for fitness of the premises, reasonable repairs, and maintenance of the premises in compliance with health and safety laws. The legislature mandated that this statute be liberally construed. *See* Minn.Stat. § 504.-18, subd. 3 (1984).[1]

Having in mind the statutory covenants, the development of the law also requires consideration of a modern restatement of law on the subject:

A lessor of land is subject to liability for physical harm caused to his lessee and others upon the land with the consent of the lessee or his sublessee by a condition of disrepair existing before or arising after the lessee has taken possession if

(a) the lessor, as such, has contracted by a covenant in the lease or otherwise to keep the land in repair, and

(b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented, and

(c) the lessor fails to exercise reasonable care to perform his contract.

Restatement (Second) of Torts § 357 (1975).

This case involves tragic injuries, related to a major defect on the premises that could have been readily repaired by the

---

1. We determined in 1984 that the statute did not expand the liability of landlords for hidden defects, a topic that is not at issue in the case at hand. *See Meyer v. Parkin*, 350 N.W.2d 435,

438 (Minn.Ct.App.1984). We said in *Meyer*, however, that the legislature "did not intend to alter a landlord's tort liability" by establishing uniform covenants. *Id.*

landlord before the disaster occurred. It is very important for this case and for others like it to determine whether it should be decided according to usual negligence standards and independent of historic standards that provide special protection for landlords.